Thank you. As the Court is aware, we were unable to do any discovery on the venue issues, despite the fact that this type of venue situation is very fact-specific. Nonetheless, we were not precluded from doing Internet searches and came upon the dispute between Sylvania and what was then called Tiberon and the various dragon companies. I'm sorry, I'm lost. Yeah, let me start over. Are you talking about your request for judicial notice? That's correct, which was just filed. There's a related case, which Judge Conte has already determined is related. It's an interference case against the dragon companies, which took over Tiberon. Tiberon no longer exists. Tiberon ceased to exist two years ago. Right. TML Acquisition Ltd. renamed itself Tiberon after acquiring all of Tiberon's assets. Yes. Those assets have now been transferred to a Singapore corporation. Yeah. And, therefore, the we filed an interference lawsuit against the various parties. So what's that supposed to have to do with this? What it has to do with this is that the — there's no — it has to do with the fact that there's no interest in Ontario whatsoever. The only — there's one witness, Muriel Caron, who is even competent to testify as to — You know, you raise a good question. To me, it's a — when we review the district court's order — Right. Aren't we confined to the facts that were before the district court? In other words, we can't tell the district court, well, you made a mistake by not considering the fact that it was not even in existence when you ruled. The — Right? Yes. Well, that's what the trial court's determination was based on. The trial court was not aware that Tiberon, in fact, didn't exist and that the moving party was TML Acquisition. Well, so as far as this record is concerned, I mean, that's neither here nor there. It's not in the record. Well — And you can't bring something in the record that wasn't before the district court, can you? A factual matter. That's what you're trying to do. The factual matter was — we were made aware of the factual matter. That's why we filed supplementals, which are before this Court and were before the trial court. But didn't the trial judge focus on the fact that regardless of when Tiberon was sold, the reasons for the board of directors and the compensation committee deciding not to give a bonus were questions that needed to be resolved and that those folks were up in Ontario. And perhaps more importantly, Canadian law was to be — was part of the choice of law analysis, and it was better for a Canadian judge to decide those issues than a Federal judge in Northern District of California. Federal judges in district courts decide on pendant jurisdiction and diversity jurisdiction. Not saying they can't do it. Not saying they can't do it, not qualified. It's just isn't that a valid — isn't that a valid consideration in determining where the appropriate forum for a case — That is certainly a consideration. The question is how much weight do you give to that consideration. And it seems to me that in this case that shouldn't be given very much consideration because Ontario is a common law British jurisdiction just like California and Montana and Hawaii and Oregon and Washington and Arizona. But we're looking at this under an abuse of discretion standard. I mean, maybe — maybe the three of us would have decided it differently, but that's not a basis for overturning a district judge's reasoned decision for moving the venue. But that's one factor. And we aren't just — we didn't just appeal the judge's ruling on the venue order. We appealed his ruling on the subsequent motions. What we brought to the attention of the Court. So all that is before Your Honors. So there it is. There's no question that those facts are pertinent and relevant to the venue question. And had we been able to conduct discovery on our venue motion initially, we would have been able to determine those facts through discovery. But we couldn't because we weren't — That just gets me lost again. I mean, the fact is before the district court, the district court knew that there had been, you know, a change of players. No. Yes, it did. No. Not on the — So did your client. No, he didn't. Yes, he did. His letters wished Carone, I think it was, good luck in consummating the sale and going forward. I mean, he knew about it. They knew that Tiburon still wasn't — I mean, it wasn't — it didn't really exist. It may not have known precisely when it was going to finish doing business in Toronto. They knew that the compensation committee was the committee that made the decision. They knew who was on that. They knew where those people lived. They knew where his witnesses were. They knew where the company's witnesses were. And the district court weighed all that out and said, look, the thing that obviously the plaintiff's residence in Northern California weighs in the plaintiff's favor, the witnesses thing, oh, well, some of them are abroad, some of them are whatever, that's kind of a wash transaction. Some of the documents are probably in Canada, but that's not a big deal either. The really big deal is that the plaintiff agreed to a choice of law provision making on Canadian law govern, and everything's going to turn on what Canada says, the effect of the bonus agreement and performance and the business judgment necessity defense and all that stuff is, it's all going to turn on Canadian law. I accept all that. And that's all that's in the record. I accept all that. Because the court weighed it, and we have to say, was he really, really wrong? What's also in the record, though, is that the actual agreement to be interpreted is not between Mr. Moss and Tiburon. They just guaranteed it. It's between the Vietnam entity. That's the company. That's the party that's supposed to determine his bonus, not Tiburon. Well, that's fine, but that's all going to be decided under Canadian law. I have no clue what Canadian law is. It's what the contract says. It doesn't require any interpretation at all. The company isn't defined as the Vietnamese joint venture. It's defined that way. And the party that's to determine the compensation is the Vietnamese joint venture, not Tiburon. But in fact, they just shifted. They didn't bother. They didn't bother to follow the terms of the contract. In deciding a forum nonconvenience issue, a motion to dismiss, is the district court compelled to educate himself or herself on the foreign law before ruling on the motion to determine whether or not it's indeed foreign? If the argument being made by Tiburon was, gee, it's director's discretion, and that's really what has to be determined here. But it's not director's discretion, because nobody from the joint venture was involved in the decision. The decision was strictly made apparently by John Shrimpton, who's the dragon person, and two people from Tiburon who had nothing to do with were not on the board of the joint venture. The contract says it's between the company and Mr. Moss. That's who paid him. That's who employed him. All Tiburon did was guarantee that agreement. If you look at the terms of the actual agreement, there is no director's discretion defense, because it's the wrong directors. I mean, so that whole argument is invalid. And that was the basis for, presumably, the basis for the court's ruling, plus the Ontario law question. And Ontario, you know, again, there's nothing complicated. See, I think the Ontario law question is almost game, set, match. You do? No. Sorry. If I were the trial judge, I would say, you know, because, look, it may be a common law country, and we may be sympathetical on the intent of the party's controls and so forth and so on. I can tell you there are lots of different versions of the Pearl Evidence Rule, for example, as to what is admissible in terms of considering whether there was a breach of the contract and so forth. I don't know what that is, what that analog is in Ontario and so forth. And I would think I would be within my discretion as a district judge to say better somebody who deals in those, you know, who plows those fields daily decide that issue than me. Well, again, the record shows that both the employment agreement and the guarantee, which was required by Mr. Maas's attorney in Berkeley, they're the ones that negotiated the terms. We wanted California law, and the Tiburon attorneys, who happen to be in Ontario, they preferred Ontario law. But the point is, nothing connects this case to Ontario, and there's a related case pending in front of Judge Conde right now. Ms. Hannon, let me ask you a totally different question, and without intending to elicit any details, just a yes or no. Have the parties ever considered mediating this dispute and going through our mediation process? We have these settlement offers, we have. Well, I don't want details, but my question is with respect to the court's mediation process. I've read this thing. I have a feel for what's at stake, and it just strikes me that it's a prime candidate to try to sit down and work through. What's at stake is 100 percent of his previous year's compensation, which was about $225,000. So that's you're right. I mean, that amount's not huge, but I mean, you've got a consulting engineer. He lives in Sonoma County. He does consulting on projects. My question, I understand that. I'm not trying to negotiate a settlement right here. No. Okay. What I was just trying to find out is whether there was any – whether the parties thought there was any prospect that would be worth going through the court's mediation system. We've had discussions, certainly, on whether the other side – the other side so far has – Okay. Never mind. So I won't go into that. Well, when you say discussions, you mean just between yourselves? Well – Not with the aid of a mediator or just between yourselves? We agreed – we agreed upon someone, actually, individual, an attorney, mediator. That's all. Okay. But then the motion was granted. You want to save some time? Sure. Okay.  Good morning, Your Honors. Good morning, Mr. Brown. My recollection is the parties have had several settlement discussions and we did participate with a mediator in the district court setting that had been recommended and didn't get anywhere. Okay. It was just a thought. It was granted. One thing that the – that on the facts, as you look at the employment agreement, the consulting agreement, it does several things and it doesn't do some things that if any of us were going to rewrite, we would do probably at this point. One thing is that in terms of determining the bonus, it says, you know, the bonus will be decided by a conversation committee, board of directors, but it doesn't really say who's. The fact is made more confusing because in the consulting agreement, you will note that Mr. Moss was made both an officer of the joint venture and an officer of Tiburon itself. So he had both those hats and his pay provision saying that he's being paid for both of those positions. So it's not quite as clear a picture as counsel suggested, at least in my view. Further – The point being so far as the forum nonconvenience determination is concerned, that – Yeah. The point being that goes back to the choice of law provisions in the Canadian law. As well, when later was brought in the preacquisition agreement that has the language that Mr. Moss apparently relies on in saying that that agreement prevented him from being awarded a bonus, we disagree with that totally and we think he's put in no evidence saying that agreement does that and we don't think the wording of the agreement necessarily does it. That agreement as well has the choice of law provision in it. You can find it in the record at page 0415 and it's, again, the Canadian choice of law provision. So if you're interpreting that agreement to figure out whether the defense he's putting up that that blocked Mr. Moss being awarded a bonus, again, it reverts back to what Canadian law is, again, supporting the notion that Canadian law plays quite a role in all of this. Aren't there some California law questions embroiled in this dispute as well? Secondarily, and that's what the district court found, there's the typical employment claim you would see that says that it wasn't timely paid and hence there ought to be penalties and the like. And the way the district court in its discretion dealt with that is essentially saying that was secondary. The important thing to figure out is, you know, whether the bonus should have been paid or not and that. And he left to time whether the Canadian court could take on that fairly straightforward lesser issue, which in his discretion he deemed to be a lesser issue. But, yes, the way it was pled, there was that second claim in there that was based on California law. Beyond that, I would note that in this situation where you have somebody, if you look at his own statements about himself that are in the record, who practices his trade internationally all over the place and agreed to Canadian choice of law provisions, the notion that you can't always have a dispute resolved in California if a dispute arose shouldn't be all that surprising or shocking in our modern world. With that in mind, unless there are other questions, I'll submit. I don't think so. Thank you. Mr. Reinold. The venue motion assumed that the compensation was to be determined by Tiburon's people. That's not what the contract, that's not what the employment agreement says. And so whether you're interpreting that contract under, it doesn't matter whose law it is, whether it's Ontario's, California's, or any other British common law jurisdiction, it's the parties that, if that company, the joint venture, was supposed to determine his bonus, then they were supposed to determine his bonus. It wasn't supposed to be handed off to some third party. That was Mr. Moss's understanding. That's what the contract says. And why we're getting off into what Tiburon did or didn't do, which a company which no compensation exists when the venue motion was filed, I don't believe, it just seems irrelevant, frankly. We have a case pending in front of Judge County for interference. He's already ruled it's related to this case. That case, they're going to apply, you apply California law to that case no matter where it is, because the interference caused injury here when he didn't get paid. So the court in California is going to apply California law to a tort of interference. So we're going to have two parallels. If we went up to Canada to go after assets that are now in Singapore, we'd have a case pending in Toronto involving nobody in Toronto, everybody's in Hanoi, over assets which are in Singapore. We'd have to take a judgment to Singapore to collect. I don't think that's going to work too well. And we'd have this interference case going on in the Northern District where California law is being applied. Where were the assets at the time of the decision by the district judge? They were somewhere in transit, I think. I'm not sure when they finalized the transfer to Singapore, but I now know that the Singapore entity, according to Dragon and TML acquisition, Tiburon, if you will, they now own 70% of the mine, which is the only asset Tiburon ever had. Submitted. Thank you. The matter just argued will be submitted.
judges: Leighton, Rymer, Tashima